IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-420-RMR

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JONATHAN ROOKS,

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America (the government), by and through Andrea Surratt and Cyrus Chung, Assistant United States Attorneys for the District of Colorado, and the defendant, JONATHAN ROOKS, personally and by counsel, David Johnson, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.  This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.    AGREEMENT

### A. Defendant's Plea of Guilty:

The defendant agrees to

(1)    plead guilty to Counts One and Four of the Indictment charging violations of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) and 18 U.S.C. § 922(g)(1)

(2)    waive certain appellate and collateral attack rights, as explained in detail below; and

(3)    agree not to contest forfeiture as more fully described below.

COURT EXHIBIT
1

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend at sentencing that the defendant benefit from a 20% downward variance from the Guidelines range finally calculated by the Court.  The government further agrees to move to dismiss Counts Two and Three of the Indictment with prejudice.  Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

**C. Defendant's Waiver of Appeal:**

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)     the sentence exceeds the maximum sentence provided in the statutes of conviction, 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) and 18 U.S.C. § 922(g)(1);

(2)     the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 31 or

(3)     the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence.  But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings.  In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of

supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Forfeiture of assets**:

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 28 U.S.C. § 2461(c) and 21 U.S.C. § 853, whether in the possession or control of the United States, the defendant, the defendant's nominees, or elsewhere.  The assets to be forfeited specifically include, but are not limited to the assets listed in Attachment A.  The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.   The defendant understands that pursuant to 18 U.S.C. § 983, the seizing agency is required to send notice in non-judicial civil forfeiture matters.  Having been advised of said rights regarding notice, the defendant hereby knowingly and voluntarily waives his/her rights to notice being sent within the time frames in 18 U.S.C. § 983 and to having the property returned to him/her if notice is not sent within the prescribed time frames.  The defendant further agrees to the forfeiture of

any substitute assets up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e).

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that the property listed in Attachment A, which was seized from the defendant for evidentiary purposes, and which is currently in the custody or control of ATF and/or USPIS, was lawfully seized and that it is evidence, contraband, or fruits of the crimes to which the defendant is pleading guilty.  The defendant, as sole and rightful owner, relinquishes and abandons all claims, title, and interest the defendant has in such property with the understanding and consent that ATF and/or USPIS may dispose of the property without further obligations.

## II.    ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of Counts One and Four are as follows:

### Count One:  21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi)

1.    The defendant knowingly or intentionally possessed a controlled substance as charged;
2.    The controlled substance was fentanyl;
3.    The defendant possessed the substance with the intent to distribute it; and
4.    The amount of fentanyl was at least 40 grams.

### Count Four:  18 U.S.C. § 922(g)(1)

1.    The defendant knowingly possessed a firearm or ammunition;
2.    The defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm or ammunition;
3.    Before the defendant possessed the firearm or ammunition, he knew he was convicted of a felony; and

4. Before the defendant possessed a firearm or ammunition, the firearm or ammunition had moved at some time from one state to another or from a foreign country to the United States.

## III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count One of the Indictment is not more than 40 years' imprisonment; not less than 5 years' imprisonment; not more than life supervised release; not less than 4 years' supervised release; a maximum fine of $5,000,000; and a $100 mandatory victim's fund assessment fee.

The maximum sentence for a violation of Count Four of the Indictment is not more than 10 years' imprisonment; not more than a $250,000 fine; not more than 3 years' supervised release; and a $100 mandatory victim's fund assessment fee.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States, or confined indefinitely if there is no country to which the defendant may be deported, denied future admission into the United States, and/or to be denied citizenship.

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set

forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

Throughout 2021, the defendant used a particular darknet vendor moniker (the "Darknet Moniker") to sell fentanyl on the darknet in the form of pills with the imprint "M" on one side and "30" on the other side.

On March 4, 2021, Customs and Border Protection seized a parcel containing a pill press die set for imprinting or pressing pills with an "M" and "30", addressed to Jonathan Rooks, 4750 N Everett Street, Wheat Ridge, CO 80033

On March 31, 2021, an undercover officer placed an order for 20 M30 oxycodone pills from the Darknet Moniker.  The defendant mailed this parcel on April 2, 2021 in Wheat Ridge, Colorado.  On April 6, 2021, a parcel from the defendant was delivered to an undercover mailbox.  On April 8, 2021, another parcel from the defendant was delivered to an undercover mailbox.  Each parcel contained 20 blue, round M30 pills that tested positive for fentanyl, among other substances.  The April 6, 2021 parcel's pills weighed 2.17 grams.  The April 8, 2021 parcel's pills weighed 2.36 grams.  The defendant's fingerprints were located on interior packaging contained in the April 6, 2021 parcel.

On April 14, 2021, an undercover officer placed an order for 50 M30 oxycodone pills from the Darknet Moniker.  The defendant mailed this parcel on April 16, 2021, in

Denver, Colorado.  On April 19, 2021, this parcel was delivered to an undercover mailbox.  It contained 50 blue, round M30 pills that tested positive for fentanyl, among other substances.  The pills weighed 5.59 grams.

On April 25, 2021, an undercover officer placed an order for 20 M30 oxycodone pills from the defendant on an encrypted messaging platform.  The defendant mailed this parcel on April 27, 2021, from Arvada, Colorado.  On April 30, 2021, the parcel was delivered to an undercover mailbox.  It contained blue M30 pills that weighed approximately 3 grams.  A field-test was negative for narcotics.

On June 4, 2021, an undercover officer placed an order for 50 M30 oxycodone pills from the Darknet Moniker.  The defendant mailed the parcel on June 7, 2021 from Denver, Colorado.  On June 9, 2021, the parcel was delivered to an undercover mailbox.  It contained blue M30 pills that weighed approximately 7 grams.  A field-test was negative for narcotics.

On June 15, 2021, an undercover officer placed an order for 50 M30 oxycodone pills from the Darknet Moniker.  The defendant mailed the parcel on June 18, 2021 from Denver, Colorado.  On June 21, 2021, the parcel was delivered to an undercover mailbox.  It contained blue M30 pills that weighed approximately 7 grams.  A field-test was negative for narcotics.

On July 9, 2021, the defendant mailed two parcels from Denver, Colorado. Each was addressed to a different individual in a different U.S. state.  These parcels each contained blue M30 pills that tested positive for fentanyl, among other substances.  One parcel's pills weighed 1.7 grams and the other parcel's pills weighed 3.24 grams.

On December 2, 2021, an undercover officer placed an order for 50 M30

oxycodone pills from the Darknet Moniker. The defendant mailed the parcel on December 3, 2021 from Denver, Colorado. On December 7, 2021 the parcel was delivered to an undercover mailbox. The parcel contained 10 blue M30 pills that tested positive for fentanyl, among other substances. The pills weighed 1.24 grams.

On or about December 9, 2021, officers executed a search warrant at the defendant's home in Wheat Ridge, Colorado. During the search, officers located numerous blue M30 pills that weighed approximately 103.64 grams. The pills tested positive for fentanyl, among other substances. *The defendant admits that he possessed this fentanyl*

During the December 9, 2021 search, officers also located: *with the intent to distribute it.*

- 5 firearms manufactured by commercial firearms manufacturers, including a Smith & Wesson revolver and a FN Herstal semi-automatic pistol, both of which moved in interstate commerce prior to December 9, 2021;

- 11 firearm lowers that were printed on a 3D printer;

- Drug packaging;

- A fentanyl test kit;

- A pill press and parts;

- Apparent drug ledgers recording sales;

- Money counter;

- 3D printer and accessories; and

- Small amounts of other drugs, such as MDMA and heroin, that the government does not allege that the defendant possessed with the intent to distribute.

Prior to December 9, 2021, Rooks was convicted of an offense punishable by a term of more than one year imprisonment. Rooks admits to possessing all of the firearms located his home on December 9, 2021, except for the Smith & Wesson revolver, which he asserts he did not know was in his home as it belonged to someone

else. Rooks was aware of his status as a convicted felon prior to possessing the

firearms located in his home on December 9, 2021.

## VI.    ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is

governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed,

the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States

Sentencing Commission. In order to aid the Court in this regard, the parties set forth

below their estimate of the advisory guideline range called for by the United States

Sentencing Guidelines. To the extent that the parties disagree about the guideline

computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is

only an estimate.  The parties understand that the government has an independent

obligation to assist the Court in making an accurate determination of the correct

guideline range.  To that end, the government may argue that facts identified in the

presentence report, or otherwise identified during the sentencing process, affect the

estimate below.

Count One

a)    The defendant is responsible for distributing or possessing with
intent to distribute 117.78 grams of fentanyl.  Pursuant to U.S.S.G.
§ 2D1.1(c)(8), his base offense level for Count One is 24.

b)    The government's position is that, pursuant to U.S.S.G. §
2D1.1(b)(13), four levels are added because the defendant
knowingly misrepresented or knowingly marketed as another
substance a mixture or substance containing fentanyl.  The
defendant's position is that this enhancement does not apply.

c)  The government's position is that, pursuant to U.S.S.G. § 2D1.1(b)(12), two levels are added because the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance.  The defendant's position is that this enhancement does not apply.

d)  The government's position is that, pursuant to U.S.S.G. § 2D1.1(b)(1), two levels are added because a firearm was possessed.  The defendant's position is that this enhancement does not apply.

e)  The parties agree that, pursuant to U.S.S.G. § 2D1.1(b)(7), two levels are added because the defendant distributed a controlled substance through mass-marketing by means of an interactive computer service.

f)  Under the government's calculation, the defendant's offense level for Count One is 34.  Under the defendant's calculation, it is 26.

Count Four

g)  Pursuant to U.S.S.G. § 2K2.1(a)(6), the base offense level for Count Four is 14 because the defendant was a prohibited person at the time of the offense;

h)  It is the government's view that, pursuant to U.S.S.G. § 2K2.1(b)(1)(B), four levels are added because the defendant possessed 16 firearms.  It is the defendant's view that, U.S.S.G. § 2K2.1(b)(1)(A), no more than two levels are added.

i)  Under the government's calculation, the defendant's offense level for Count Four is 18.  Under the defendant's calculation, it is no more than 16.

Total Offense Level

j)  Pursuant to U.S.S.G. § 3D1.4, Count Four is disregarded from a grouping analysis.

k)  Under the government's calculation, the adjusted offense level is 34.  Under the defendant's calculation, it is 26.

l)  Pursuant to U.S.S.G. § 3E1.1(a) and (b), three levels are subtracted for acceptance of responsibility.

m)  Under the government's calculation, the resulting total offense level

is 31.  Under the defendant's calculation, it is 23.

n)   The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions.  The parties believe the defendant is in criminal history category V.

o)   The career offender/criminal livelihood/armed career criminal adjustments do not apply.

p)   The advisory guideline range resulting from the government's calculations is 168-210 months.  The range resulting from the defendant's calculation is 84-105 months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 108 months (bottom of Category I) to 235 months (top of Category VI) (under the government's calculation) and from 46 months to 115 months (under the defendant's calculation).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

q)   Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $30,000 to $5,000,000 (under the government's calculation) or $15,000 to $5,000,000 (under the defendant's calculation) plus applicable interest and penalties.

r)   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term shall not be fewer than 4 years.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 6/6/2~

Jonathan Rooks
Defendant

Date: 6/6/22

David Johnson
Attorney for Defendant

Date: 7/27/22

Andrea Surratt / Cyrus Chung
Assistant U.S. Attorneys

**ATTACHMENT A**

| Property Description |
| --- |
| Misc 3D printer accessories including filament nozzles, heating elements, resin, and molding tools |
| Black Longer 3D Printer |
| Royal Sovereign International Bill Counter Model #RBC-E105-ADBK S/N: N2003522 |
| iPad S/N: dMPTF4KKGXQ4 |
| Misc storage devices including 11 USB drives and 1 midco SD card |
| Truweigh Scale Model  TUF-1000-01 |
| FLOUREON Digital Voice Recorder |
| Samsung Galaxy Note 20 Ultra ID: 073501180815011822 |
| Samsung Galaxy Note 5 Model SM-N920V IMEI: 99000701866868 |
| Samsung Galaxy Note 20 Ultra ID: 02431028110701922 |
| Two USB Thumb Drives |
| MyWeigh Triton T2 300 Digital Scale |
| Royal Digital Postal Scale Model DG 110 |
| Samsung Galaxy S5 |
| HP Pavilion Model #15 Laptop S/N: 5cd0198Z7V |
| ACER Laptop Model N19Q10 S/N: NXHUVAA006044213627600 |
| Western Digital Blue 1 TB Hard Drive |
| Ledger Nano S Cryptocurrency Hardware Wallet |
| SD card |
| Two Magnetic Card Readers |
| Raspberry PI with Micro SD card |
| Cricket Wireless LG cell phone |
| Asus Vivobook Laptop Model F512J S/N: L4NOCV11S14917A |
| Seagate Backup Plus 5TB USB hard drive S/N: NAM9KN1H |
| Plastic Heat Film Sealer Model PFS 200 |
| Digital Camera |
| Pill Press |
| Ranger Number 8 S/N: Not Visible |
| FN Five-seveN Pistol S/N: 386364953 |
| High Standard Model B Pistol S/N: 37703 |
| R92 357 MAG / 38 Special Rifle S/N: 7cr013225m |
| Ruger American Rifle S/N: 83264121 |
| 22 Rifle S/N: G252866 |
| Ammo and Magazines Found (room 11) |
| Partial 3D printed firearms/parts (room 5) |
| Partial 3D printed firearms/parts (room 1) |
| Ammo (room 2) |
| Misc gun parts (room 2) |
| Smith & Wesson 38 Revolver S/N: J765328 |