IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00420-RMR

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JONATHAN ROOKS,

       Defendant.

## OBJECTIONS AND RESPONSES TO PRESENTENCE REPORT [DOC. 40]

The defendant, Jonathan Rooks ("Mr. Rooks"), by and through undersigned counsel, David E. Johnson, hereby files the below Objections and Responses to the Presentence Report (Doc. 40 ("PSR")):

### OBJECTIONS THAT AFFECT THE GUIDELINE RANGE

Paragraph 59 (two-level firearm enhancement): The PSR applies a two-level enhancement under Guideline Section 2D1.1(b)(1) for possession of a firearm. *See* PSR at ¶ 59. However, the Guidelines state that if "it is clearly improbable that the weapon" was not "connected with the offense," then the enhancement should not be applied. U.S.S.G. § 2D1.1, app.note 11(A). Because that exception applies here, the two-level enhancement should not be applied. Mr. Rooks objects.

Mr. Rooks admits to possessing all but one of the firearms found at his home on December 9, 2021. *See* PSR at ¶ 20. However, none of the firearms had any connection with the instant offense. Mr. Rooks' "conduct was anonymously mailing the

pills that anonymous people bought from him on the dark web." PSR at ¶ 58. Under the facts of this case, Mr. Rooks has satisfied his burden to establish that "it is clearly improbable that the weapon[s were] connected with the offense." *United States v. Heckard*, 238 F.3d 1222, 1233 (10th Cir. 2001).

The PSR reasoned that the enhancement applies since "[t]he firearms were in the same residence as the one he kept the fentanyl pills at, and where he packaged and distributed the pills from." PSR ¶ 59.  Two of those assertions are incorrect. It is true that the fentanyl pills were found in Mr. Rooks' residence.  But Mr. Rooks did not package them in the residence.  Instead, he packaged them for mailing in a small, detached shed that, albeit, was associated with the residence.

More importantly, Mr. Rooks did *not* "distribute" fentanyl pills from his residence, in the traditional sense of that word. Purchasers did not come to Mr. Rooks' residence. Mr. Rooks' residence was not the location of any sale.  Instead, the location of Mr. Rooks' sales was the Internet.  Mr. Rooks received orders for the pills; he then drove to the post office and mailed the pills to the purchasers. The firearms found in Mr. Rooks' residence were completely unconnected with his crime.  Mr. Rooks grew up around firearms. He was a firearm hobbyist, which is why he had the firearms (albeit illegally). The firearms were kept in the bedroom closet. They never left the residence. Mr. Rooks never removed the firearms from the residence. In essence, firearms in a residence have nothing to do with Internet sales and mailings from a post office. The two-level enhancement under Section 2D1.1(b)(1) should not be applied.

Paragraphs 63-66 (two-level premise enhancement): The PSR also applies a two-level enhancement for "maintain[ing] a premise for the purpose of manufacturing or

2

distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Mr. Rooks objects. The application note states that in order for the enhancement to apply, drug manufacturing or distribution must have been "one of the defendant's **primary or principal** uses for the premises." *Id*. at app.note 17 (emphasis added). Conversely, it states the enhancement does not apply if the drug conduct was "one of the defendant's **incidental or collateral** uses for the premises." *Id*. (emphasis added). The latter applies here.

      Here, it cannot be said that a primary purpose of Mr. Rooks' residence was for manufacturing or distributing fentanyl. Instead, the drugs found in Mr. Rooks' home (where he lived full-time with his girlfriend) were, if anything, an incidental use of his full-time residence.

      As explained above, Mr. Rooks' offense involved dark-net Internet selling of fentanyl pills. Mr. Rooks *never* used his residence "for manufacturing or distributing a controlled substance." *Id*. That fact alone should prevent application of the enhancement. Specifically, he never manufactured fentanyl at his residence; he never distributed fentanyl from his residence. While the fentanyl pills were located at the residence, their location there was merely "incidental or collateral" to Mr. Rooks' living at the residence with his girlfriend. In fact, Mr. Rooks' residence had virtually no role in his fentanyl distribution other than it being the place he lived.

      If the enhancement were to be applied under these facts, it would result in an overly broad application of the enhancement. The enhancement was promulgated in 2011 at the direction of Congress. *See* U.S.S.G. Appendix C, Amendment 748. The new enhancement was meant to apply in situations that were "generally described in section 416 of the Controlled Substances Act (21 U.S.C. [§] 856)." *Id*. In turn, 21

U.S.C. § 856 has colloquially been called "the so-called 'crack-house statute," *United States v. Verners*, 53 F.3d 291, 293, 296 (10th Cir. 1995), used to prosecute a "stash house." *United States v. Palacios*, 604 F. App'x 682, 683 (10th Cir. 2015).  *See also United States v. Guzman-Reyes*, 853 F.3d 260, 264 (5th Cir. 2017) (describing that 21 U.S.C. § 856 is "commonly known as the 'stash house' statute"). Mr. Rooks did not have a stash house.  He did not even sell drugs from his house; rather, he mailed the drugs after driving from his house to the post office. If the enhancement applies here, then it would apply in virtually all cases where a distribution-amount of drugs were located in a person's full-time residence. That should not be the rule. If it is, it certainly is not the one Congress intended in directing promulgation of the two-level enhancement.

In support of the enhancement, the PSR cites *United States v. Murphy*, 201 F.3d 1185, 1191 (10th Cir. 2018). But in that case, the Tenth Circuit explained: "Our case law, and that of other circuits, instructs that for drug-related activity to constitute a primary use of the residence, it must not only be frequent but also substantial." *Murphy*, 201 F.3d at 1191.  Unlike here, in *Murphy*, the defendant had engaged in two sales of controlled substances from the residence. *Id*. at 1192 ("Murphy also conducted at least two drug sales in his home.").  In the instant case, zero sales occurred in Mr. Rooks' residence. *See* PSR at ¶ 62 (stating that the government indicated "there is no evidence any transactions occurred at the residence").

The more analogous case is the Ninth Circuit's decision in *United States v. Job*, 871 F.3d 852 (9th Cir. 2017).  There, there was no evidence that the defendant "ever distributed [drugs] out of his home." *Id*. at 872.  Instead, the evidence showed "only that [drug] had been stored in" the defendant's residence, which the district court did not

consider whether that was "one of the primary purposes" of the residence. *Id*.  As a result, the circuit reversed the district court's application of the 2-level enhancement.

Under the facts of this case, any drug conduct occurring at Mr. Rooks' residence, where his girlfriend also lived, was an incidental or collateral use for the premise. Section 2D1.1(b)(12)'s two-level enhancement should not be applied.

Paragraphs 74, 78, 105 (correct total offense level and guideline range):  With a correct adjusted offense level of 26 and total offense level of 23, *see* PSR at ¶¶ 74, 78, the correct advisory guideline range is 84 to 105 months, *see id*. at ¶ 105.

**OBJECTIONS AND RESPONSES THAT DO NOT AFFECT THE GUIDELINE RANGE**

Paragraphs 45 & 46, 49: In its "Additional Information" section, the PSR mentions that Mr. Rooks purchased two vehicles with cash. *See* PSR at ¶¶ 45-46. Mr. Rooks clarifies that those purchases were unrelated to this case. The purchases were the result of a $100,000 legal gambling win (through Chumba Casino) that Mr. Rooks had in 2020. In turn, the PSR's statement that Mr. Rooks only had $23,401 in income in 2020 is not correct. *Id*. at ¶ 49.

Paragraph 102:  The PSR states that Mr. Rooks' parents were married until his father's passing. That is not correct. Mr. Rooks recalls that his parents divorced approximately one year before his father passed away. Mr. Rooks was approximately 7 years old when his parents divorced.

Paragraphs 102, 104:  The PSR states that Mr. Rooks "did not witness any domestic violence or abuse between his parents." That is incorrect.  Counsel has sent an e-mail communication to the PSR author with the correct information for inclusion in

the final restricted PSR. In that email, Mr. Rooks also included additional information about abuse for inclusion in paragraph 102 of the final restricted report.

Paragraph 103 and Page R-3: Mr. Rooks' uncle passed away 19 (not 15) years ago. *See* PSR at ¶ 103. Mr. Rooks was approximately 18 (not 22) years old when he passed away. *See id*. at R-3.

Paragraph 104: In discussing a traumatic event from his childhood, Mr. Rooks adds the death of his best friend, Stevie Wilson. Mr. Rooks knew Mr. Wilson from Boy Scouts. Sadly, Mr. Wilson was shot in the head and died on New Year's Eve when Mr. Rooks was 17 years old. Mr. Rooks was not present when Mr. Wilson was shot, but he learned about it the next day from Mr. Wilson's parents. Mr. Rooks felt guilty because the pair were supposed to be together that night but were not.

Paragraph 107: The PSR discusses Mr. Rooks' daughter. Mr. Rooks adds that he had full custody of his daughter until approximately 2015 (when he was 30 years old), at which time he had partial custody with his daughter's mother.

Paragraph 114: Mr. Rooks requests that the PSR include the fact that Mr. Rooks' prosthetic leg needs to be charged every day, requiring him daily access to an outlet for one to two hours.

Further, as it relates to Mr. Rooks' physical condition, undersigned counsel has provided to the PSR author a BOP Medical Status sheet for inclusion in the final PSR. Finally, Mr. Rooks also asks that the PSR include his request for designation to a medical facility and for this Court to recommend his BOP designation at a medical facility.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2023, I filed the foregoing *Objections and Responses to Presentence Report [Doc. 40]* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

Andrea L. Surratt, Assistant United States Attorney
E-mail:  andrea.surratt@usdoj.gov

I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

Jonathan Rooks (via U.S. mail)


s/ David E, Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

7