IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 21-cr-00420-RMR

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JONATHAN ROOKS,

       Defendant.

---

**MOTION FOR BELOW-GUIDELINE SENTENCE**

---

The defendant, Jonathan Rooks ("Mr. Rooks"), by and through undersigned counsel, David E. Johnson, hereby files this Motion for Below-Guideline Sentence, thereby requesting this Court impose a sentence 20% below the range 84 to 105 months – *i.e.* impose a sentence of **67 to 84 months**, and in support thereof states as follows:

**INTRODUCTION**

Mr. Rooks is a 37-year-old who has never served significant time in custody. The imprisonment term he is now facing, even under his request, is quite daunting to him. He becomes emotional when thinking about it. Growing up, he had a difficult, unstable upbringing, which is another subject he has difficulty reflecting on. Nevertheless, after moving to Colorado, he went several years without any involvement in the criminal justice system. In 2015, however, Mr. Rooks' roommate was murdered. It was a traumatic event that caused Mr. Rooks to increase his drug use. At that time, he began accumulating prior convictions (mostly misdemeanors). Despite being in Criminal

History Category V, the longest amount of continuous confinement previously served by Mr. Rooks was less than 9 months. *See* Doc. 40 ("PSR") at ¶ 91.

The PSR calculates a significant sentencing range in this case: 120 to 150 months. PSR at ¶ 145. The government argues for an even higher range, arguing that a 4-level enhancement not included in the PSR should be applied. *See* Doc. 48. Mr. Rooks argues that the guideline range is lower than both the government and PSR's calculation: 84 to 105 months. *See* Doc. 47.

Regardless of what the guideline is, the government has agreed to recommend a 20% downward variance from the range that this Court calculates. *See* Doc. 36 at 2. Mr. Rooks seeks a sentence that is 20% below his calculation. Specifically, Mr. Rooks requests that this Court impose a sentence in the range of **67 to 84 months**, which is 20% below his calculated range of 84 to 105 months. In short, regardless of what this Court calculates the guideline range to be, a sentence in the range of **67 to 84 months** best complies with Section 3553(a).

Whatever it is calculated to be, the Guideline is merely advisory, *United States v. Booker*, 543 U.S. 220 (2005), and the range of sentencing options is broad. *See, e.g., Spears v. United States*, 555 U.S. 261 (2009); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007). This Court may not presume that a within-Guideline sentence is appropriate, *Rita*, 551 U.S. at 351, nor may it put its "thumb on the scales" in favor of a Guideline sentence, *Kimbrough*, 552 U.S. at 113 (Scalia, J., concurring). A district court must "give respectful consideration to the Guidelines" but is permitted "to tailor the sentence in light of other statutory concerns as well." *Kimbrough*, 552 U.S. at 101

(internal quotations omitted). The Supreme Court has stated that when a District Court "correctly calculate[s] and carefully review[s] the Guidelines range," it "necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54. Thus, this Court must first calculate and consider the advice of the Guidelines, but it must then turn to an "individualized assessment" of Mr. Rooks and his case "based on the facts presented." *Gall*, 552 U.S. at 50.

Similarly, when making these individualized assessments, sentencing courts are free to categorically disagree with the Guidelines' recommended sentence in any particular case. This Court may impose a non-guideline sentence due to a rejection of the Guideline and holding a contrary view of what is appropriate under Section 3553(a). This includes the freedom to merely disagree with a guideline's computations and the policy decisions that are contained in the guideline. *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011); S*pears*, 129 S. Ct. at 843.

## ARGUMENT

The sentence that best complies with Section 3553(a) is an imprisonment term in the range of 67 to 84 months. A sentence in that range would result in a statutorily "sufficient" sentence, whereas a sentence higher than 84 months would be "greater than necessary." 18 U.S.C. § 3553(a).

### Lack of prior significant imprisonment time

A sentence in the range of 67 to 84 months would result in both the longest sentence ever imposed on Mr. Rooks (by far) and the longest period of continuous confinement ever served by Mr. Rooks (again, by far). Although Mr. Rooks is in Criminal History Category V, he has only been sentenced to a DOC imprisonment term

one prior time in his life. In 2018, he was sentenced to 18 months (1 ½ years) Colorado DOC. PSR at ¶ 91. It was his first and only prior DOC term. In fact, that case was the only prior custodial sentence ever imposed on Mr. Rooks that was articulated as a number of *months*.  Every one of Mr. Rooks' other prior sentences were imposed as a matter of *days*. Here, imposition of a sentence in the range of 67 to 84 months (5 ½ to 7 years), would be a significant and lengthy sentence, especially to a person like Mr. Rooks. Even the sentence requested here is formidable from Mr. Rooks' perspective, let alone the much higher sentence requested by either the government or PSR.

On that lone prior DOC sentence, Mr. Rooks served less than 9 months – from May 24, 2018 to February 19, 2019. *Id*. Prior to the instant case, it was the longest time of confinement served by Mr. Rooks.  Already in the instant case, Mr. Rooks has been in continuous custody for longer than that – over a year (*i.e.* since December 10, 2021). Even under his requested sentence here (in the range of 67 to 84 months), Mr. Rooks has a significant amount of imprisonment time ahead of him. He will serve an exponentially longer sentence in this case than he ever has before.  Under such circumstances, Mr. Rooks' requested sentence is more than sufficient to satisfy Section 3553(a).

**Difficult Upbringing**

Mr. Rooks has had a difficult life, starting with his upbringing. He witnessed significant violence and abuse between his parents, which is something that is still difficult for him to think and talk about.[1] It happened almost daily, both verbal and

---

[1] Mr. Rooks did not feel comfortable talking about his parents' violence and his mother's abuse during the PSR interview. Counsel has provided supplemental information to the PSR.

4

physical arguments. At the time, Mr. Rooks was a young child. At approximately 7 years old, Mr. Rooks' parents divorced. However, his parents' fighting continued. On one occasion, Mr. Rooks recalls his mom and dad both pulling at opposite ends of Mr. Rooks' arms, fighting over Mr. Rooks.

Approximately one year after his parents' divorce, Mr. Rooks' father died from a heart attack. After his father's passing, Mr. Rooks' mother became physically abusive. Mr. Rooks would frequently be beat with objects. After his father's death, his mother also began a relationship with an abusive man, whom his mom eventually married. His stepfather abused both Mr. Rooks and his mother. Mr. Rooks described that his stepfather was "very hands-on" when disciplining him.

Mr. Rooks lived with his mom and stepfather until age 13. At the end of the time when Mr. Rooks was living with his mother and stepfather in Washington State, Mr. Rooks began to get into legal trouble. *See* PSR at ¶¶ 79-80. It was at a time when Mr. Rooks was experiencing significant abuse. At one point, Mr. Rooks was placed in foster care for about a year due to the abuse. Further, in school, Mr. Rooks was occasionally bullied for not having enough clothes. As a result of his upbringing, Mr. Rooks now has a "distant" relationship with his mother.

At the age of 13, Mr. Rooks was diagnosed with bone cancer. It was a traumatic event in his life. Mr. Rooks underwent chemotherapy for approximately one year. Two years after his diagnoses, his right leg was amputated. PSR at ¶ 114. Mr. Rooks currently walks with the aid of a prosthetic leg, which needs to be charged on a daily basis. *Id*.

Starting at approximately age 13 (approximately 1998), Mr. Rooks lived with his paternal uncle and his wife. Mr. Rooks considered his uncle a "father figure". PSR at ¶ 103. Mr. Rooks moved from Washington State to Alabama for his high school years. He attended high school in Alabama starting in August 2000, but left in August 2004 before earning his diploma. *Id*. at 131. (N.B. Mr. Rooks did earn his GED a little more than a year later, in November 2005. *Id*.)

### A Substantial Law-Abiding Life Interrupted by Drug Use and Addiction

There was a substantial period of Mr. Rooks' life when he was law-abiding. Specifically, during a twelve-year period from late-2001 (age 16) through 2014 (age 29), Mr. Rooks led a largely law-abiding life. In his early 20's, he started a relationship with the mother of his child; the couple have a 13-year-old daughter. *See* PSR at ¶ 107. After the couple separated, Mr. Rooks had full custody of his daughter, which he maintained until 2015.

During the 12-year time period through 2014, Mr. Rooks' only conviction was a municipal court case for drug paraphernalia and possessing marijuana, *see* PSR at ¶ 82 (sentenced to costs/fines). Thus, after receiving a 15-day custodial sentence in 2001 for mischief, *see* PSR at ¶ 81, for the next 12 years, Mr. Rooks led a largely law-abiding life. Mr. Rooks has thus demonstrated that he can respect and follow the law. In essence, Mr. Rooks does not have a criminal personality bent on violating the law. Instead, his issue relates to his drug addiction.

Beginning in approximately 2012, Mr. Rooks received a prescription for leg pain. Specifically, he began using Oxycodone for prescription pain management. *See* PSR at ¶ 127. He was in his late-20's at the time. Up until that time in his life, the only

substances Mr. Rooks had used were alcohol and marijuana. However, his prescribed Oxycodone use soon turned into illegal use. After abusing Oxycodone for a period of time, he soon started using methamphetamine and heroin. He used heroin as a substitute for Oxycodone. His heroin use was daily, up to 3.5 grams a day at one point. *Id*. at 125.

Mr. Rooks' heroin use then turned into fentanyl use. In fact, two years ago, Mr. Rooks stopped using heroin and started using fentanyl. At the time of his arrest, Mr. Rooks was smoking between 50 and 100 fentanyl pills a day. PSR at ¶ 128. Mr. Rooks thought he was going to die and, frankly, his arrest may have saved his life.

Mr. Rooks' fentanyl use was so heavy that when he was being interviewed by law enforcement, he asked if he could "smoke a pill" (which, of course, was denied). Still further, Mr. Rooks got sick and nauseous while in custody on the day of his initial appearance in this case (on December 10, 2021). Mr. Rooks had to be hospitalized and was unable to return to court until 11 days later (on December 21). *See* Docs. 8, 10, 14. *See also* PSR at ¶ 117 (explaining that Mr. Rooks was "going through withdrawal from fentanyl" and was transported to two hospitals).

Mr. Rooks' drug use had substantially increased in 2015. Specifically, in early-April 2015, Mr. Rooks' roommate was found murdered. *See id*. at ¶ 129. It was the second time Mr. Rooks' best friend was murdered. The first time occurred in 2002, when Mr. Rooks' best friend was shot in the head on New Year's Eve. Then, in 2015, Mr. Rooks was once again woken up and given the news that another friend had been murdered. It was a traumatizing sequence of events. At the time of the April 2015

murder, Mr. Rooks does recall that he was using Oxycodone. Following the murder, his drug use increased exponentially.

Almost certainly not a coincidence, for the first time since he was a minor, Mr. Rooks' criminal cases started again in 2015. As the PSR summarized: "Between the ages of 29 and 35, the defendant would consistently be in trouble with the law". PSR at R-3. Specifically, after his roommate's murder in April 2015, Mr. Rooks obtained six misdemeanor cases from 2015 through 2017. Then, in November 2017, at the age of 32, he was arrested in what would become his first felony conviction. In 2018, he was arrested on what would become his second felony conviction. It was this case that resulted in Mr. Rooks' first DOC sentence. He was 33 years old and, as detailed above, sentenced to imprisonment for the first time.

### Nature and Circumstances of the Instant Offense

Both the Plea Agreement and PSR detail the nature and circumstances of the instant offense. In short, Mr. Rooks was a darknet vendor using the name "blue30s" and selling fentanyl on the darknet. He would obtain orders for the pills on the darknet vendor site and, in turn, mail the pills to purchasers. Mr. Rooks' sales were anonymous. On numerous occasions, pills he mailed tested "negative for narcotics" and "did not yield any positive results for the presence of narcotics." *See* PSR at ¶¶ 13, 14, 15, 25, 26, 27.

Mr. Rooks gave warnings to his potential customers. "If this is the first time you will be trying these[,] I recommend don't," he stated, explaining that "these are highly addictive". *See id*. at ¶ 36. He also recommended that users "dose with a minimu[m] amount". *Id*. During Mr. Rooks' *Miranda* interview with law enforcement at the time of

8

his residence search, officers commended Mr. Rooks for his warnings. "We've noticed that," the agent stated, contrasting Mr. Rooks with others who do not care about that issue. During that interaction, Mr. Rooks himself stated how "I don't like them either," referring to the pills, explaining that's exactly why he was trying to stop.

Finally, as it relates to Mr. Rooks' *Miranda* interview, it was a 1-hour and 48-minute recording.  Mr. Rooks was extremely cooperative with investigators, demonstrating respect for the law. *See* PSR ¶ 43.  "You've actually been very cool," law enforcement told Mr. Rooks in the middle of the recording.

## Post-Arrest Conduct

Since Mr. Rooks' arrest in December 2021, he has done all he can to use his time productively. *See* Doc. 40-2 (GEO certificates and FDC education transcript). At first, Mr. Rooks was held at GEO. During that time, he earned 8 programming certificates. *Id*.  Mr. Rooks was then moved to FDC, where he immediately began participating in programming. Mr. Rooks' strongest desire was to improve himself, live a law-abiding life, and put all criminal behavior in his past. Although Mr. Rooks cannot change his past and what he did to be in federal court, he is committed to improving his future.

Most importantly, the PSR explained how Mr. Rooks acknowledges that "he is in need of inpatient treatment." *Id*. at ¶ 130. "[H]e is amenable to participating in treatment in the future." *Id*.  Further, Mr. Rooks is also interested in continuing his education. PSR at ¶ 132.

## CONCLUSION

WHEREFORE, after considering the history and characteristics of Mr. Rooks and the nature and circumstances of this case, this Court should impose a sentence in the range of <u>67 to 84 months</u> imprisonment. 18 U.S.C. § 3553(a)(1). A higher sentence would be greater than necessary (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Such a sentence would also adequately take into consideration "the kinds of sentences available," the advisory guideline range, as well as the Guideline's policy statements. 18 U.S.C. § 3553(a)(3), (4), (5).  Finally, such a sentence would not be an unwarranted disparity, § 3553(a)(6), given the unique facts of this case and characteristics of Mr. Rooks.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


<u>s/ David E. Johnson</u>
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_johnson@fd.org
Attorney for Defendant

CERTIFICATE OF SERVICE

    I hereby certify that on January 12, 2023, I filed the foregoing ***Motion for Below-Guideline Sentence*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail address:

    Andrea L. Surratt, Assistant United States Attorney
    E-mail:  andrea.surratt@usdoj.gov

    I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

    Jonathan Rooks (via U.S. mail)

    s/ David E. Johnson
    DAVID E. JOHNSON
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO  80202
    Telephone:  (303) 294-7002
    FAX:  (303) 294-1192
    David_johnson@fd.org
    Attorney for Defendant